UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT W. BELCOURT,                                   Case No. 08-13808

    Petitioner,                                                Hon. John Corbett O'Meara

v.

MARY BERGHUIS, Warden,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE**
**PETITION FOR WRIT OF HABEAS CORPUS**

Robert W. Belcourt ("Petitioner"), presently confined at the Brooks Correctional Facility in Muskegon Heights, Michigan, seeks this issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner, through his counsel Kenneth M. Mogill, challenges his conviction for one count of criminal sexual conduct in the first degree (Count I), three counts of criminal sexual conduct in the second degree (Counts III, IV, and VII), and two counts of criminal sexual conduct in the third degree (Counts II and VIII).  For the reasons stated below, Petitioner's application for writ of habeas corpus is DENIED.

**I. Background**

Petitioner was convicted of the above offenses following a jury trial in Oakland County Circuit Court, which took place in July 2005.  On August 18, 2005, the Honorable Colleen A. O'Brien sentenced Petitioner to a prison term of fifteen to fifty years on Count I, five to fifteen years on Count III, five to fifteen years on Count II, two to five years on Counts IV and VII, and one to two years on Count VIII, to be served concurrently.  Petitioner appealed; the Michigan

1

Court of Appeals affirmed his convictions and sentences in an opinion dated February 20, 2007. His application for leave to appeal to the Michigan Supreme Court was denied on September 10, 2007.

This court recites verbatim the relevant facts regarding Petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which facts are presumed correct on habeas review. See Long v. Stovall, 450 F. Supp.2d 746, 749 (E.D. Mich. 2006):

> Defendant, age forty-two at the time of trial, was convicted of sexually assaulting his stepdaughter, LB, age nineteen at the time of trial, his niece, AP, age fourteen at the time of trial, and a neighbor, EB, age seventeen at the time of trial. According to LB, defendant sexually abused her on numerous occasions until about two months before she moved out of the house at age seventeen. LB explained that all of the sexual assaults occurred at night and that she always feigned sleeping during them. LB testified that, beginning in 1998 or 1999, when she was eleven or twelve years old, defendant began "dry humping" her. LB explained that defendant assaulted her in this manner up to four times a week, with each act lasting ten to twenty minutes. "Around a year later," when LB was thirteen years old, defendant began touching her bare breasts in a "circular motion" and later graduated to "sucking" her nipples up to four times a week. Defendant would sometimes return to "dry humping" after fondling her breasts. When LB was fifteen years old, defendant began digitally penetrating her vagina with two fingers for five to ten minutes each time. She indicated that when she was sixteen and seventeen, defendant assaulted her about once or twice a week. LB indicated that the last incident occurred in 2003 and involved defendant rubbing her vagina. LB moved out of the house in March 2003, primarily because she and her mother were not getting along.
>
> EB, who lived next door to defendant, was a friend of LB's younger sister, JB, and often slept at defendant's house. According to EB, on March 30, 2003, when she was fifteen years old, she fell asleep on the living room floor and was awakened at about 3:30 a.m. by defendant, who was "on top of her" "jirating" [sic] his "pelvic area" "up and down" on her "butt." Defendant claimed that he was fixing EB's blanket and left the room. EB testified that she left the house and arrived home at about 4:00 a.m. and told her mother what had occurred.
>
> AP is defendant's wife's niece. AP testified that she spent the night at defendant's house about twice a month because she was a good friend of defendant's thirteen-year-old biological daughter, RB. According to AP, in July 2003, when she was twelve years old, she was asleep on a couch covered by a blanket. When she woke up, her blanket was on the floor, and defendant was "on top of her" "doing like

2

a humping motion" moving "his private part" "[u]p and down." AP told defendant to "get away from her" and defendant left the house "shortly after that." AP went in a bathroom and called her mother to pick her up at approximately 6:30 a.m. AP left the house ten to fifteen minutes later. AP's mother testified that defendant called their house at 10:00 a.m. and said that AP may have been ill from a pizza they had eaten, from watching a scary movie, or from having a bad dream. AP testified that before that incident, two other incidents occurred when she was between eight and ten years old. AP explained that on one occasion while she was on the living room couch, defendant tickled her on her stomach and then rubbed his penis against her "butt" for about five minutes. About a month later, AP was on the floor and defendant put his hand down her pants and "started tickling" her "butt" and "her private part." AP did not initially report those incidents to her mother.

At trial, defendant testified on his own behalf and denied ever inappropriately touching any of the victims. The defense presented several defense witnesses, including defendant's wife, former wife, two sons, and father-in-law, who all denied seeing defendant act inappropriately with any of the victims and testified regarding defendant's character for honesty. The defense also called the police detectives who took the initial complaints from the victims.

People v. Belcourt, No. 265275, *1-2 (Mich. App. February 20, 2007)(footnotes omitted).

Petitioner's conviction was affirmed on appeal. Id.; lv. den. 480 Mich. 854 (2007).

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

A. Where, as here, the prosecutor's expert impermissibly vouched for the credibility of the complainant's allegations, the trial court erred in denying the defense motion for a mistrial and a curative instruction and deprived petitioner of his due process right to a fair trial.

B. The prosecutor erred in closing argument in vouching for the credibility of the complainant by implying knowledge of facts outside the record that allegedly corroborated the complainants' allegations, depriving petitioner of his due process right to a fair trial.

C. Petitioner was denied his constitutional right to the effective assistance of counsel where his trial attorney failed to object to the prosecution's improper closing argument.

D. It was prejudicial error for the trial court to permit the complainants' mothers to offer extensive hearsay testimony regarding their alleged previous statements where the testimony did not satisfy the requirements of MRE 803A, and Petitioner's trial counsel was ineffective for failing to objective to it.

3

E. The trial court erroneously scored OV9 and OV11 and also violated Petitioner's due process rights at sentencing by scoring the guidelines for reasons not proven to the jury beyond a reasonable doubt, in violation of the Sixth and Fourteenth Amendments.

F. Trial counsel was constitutionally ineffective at sentencing for failing to object to the scoring of OV9 and OV11.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

## III. Discussion

### A.  Claim #1: Impermissible vouching by an expert witness

Under Michigan law, an expert "an expert may not vouch for the veracity of a victim."

People v. Peterson, 450 Mich. 349, 352 (1995).  Petitioner alleges that Ms. Allen, an expert witness for the prosecutor, directly and indirectly vouched for the veracity of AP.  The Michigan Court of Appeals found that, with respect to the alleged direct vouching, "we cannot find that the trial court's decision to deny defendant's motion for a mistrial was an abuse of discretion." People v. Belcourt, No. 265275, *5 (Mich. App. February 20, 2007).  With respect to the alleged indirect vouching, the Michigan Court of Appeals held that Petitioner "has not demonstrated either a plain error or shown that his substantial rights were affected." Id. at *6.

      Petitioner's objections to the admission of Ms. Allen's testimony are a matter of state law and will not be reviewed by a federal court absent a showing that the admission of Ms. Allen's testimony constitutes a denial of fundamental fairness.  The Supreme Court has made it clear that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (internal quotations omitted).  Accordingly, "a trial judge's decision concerning the admission of evidence is a state law matter generally not subject to habeas review." Wilson v. Parker, 15 F. 3d 682, 705 (6th Cir. 2008). See also Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000) ("Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.")(quoting Cooper v. Sowders, 83 F.2d 284, 286 (6th Cir. 1988)).  A federal court may review a state-court ruling regarding the admission of evidence only "if an evidentiary ruling is 'so egregious that it results in a denial of fundamental fairness.'" Ege v. Yukins, 485 F.3d 364, 375 (6th Cir. 2007) (quoting Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003)).

5

"Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." Ege, 485 F.3d at 375 (quoting Brown v. O'Dea, 227 F.3d 642, 645 (6th Cir. 2000)).

With respect to the alleged direct vouching, the trial court's denial of a mistrial does not rise to the level of a constitutional violation that would allow this court to reexamine the state court's determination of state law. Petitioner objects to the following question and answer:

> Q. Is your purpose of doing these interview is [sic] to determine the veracity of the statement that children give?
> A. Some - yes, somewhat, yes.

The trial court immediately struck the question and answer, and, in its final instructions, the trial court reminded the jury not to consider stricken testimony. Admitted testimony included several express statements by Ms. Allen that she could not testify about the credibility of AP's allegations. Ms. Allen's testimony referred only to her interview with AP, and the challenged testimony was a relatively small portion of Ms. Allen's testimony. Furthermore, the jury acquitted Petitioner of the two counts of second-degree CSC involving AP, finding him guilty only of assault with intent to commit second-degree CSC. In light of all this, Ms. Allen's alleged direct vouching was not such a significant factor that the trial court's denial of a mistrial constitutes a denial of fundamental fairness.

Nor does the admission of alleged instances of implied vouching constitute a denial of fundamental fairness. First, Petitioner alleges that Ms. Allen implied that the interview process used was more reliable than methods that had led to erroneous daycare convictions in the 1980s. Second, Petitioner alleges that Ms. Allen implied that she only recommends cases for criminal prosecutions after determining that the allegations are true. Finally, Petitioner alleges that Ms.

Allen implied that cases only proceed if she determines that the allegation of sexual abuse is more credible than any alternative hypothesis. However, taken in context with the remainder of Ms. Allen's testimony, these isolated statements were not a "crucial, critical highly significant factor." As the Michigan Court of Appeals summarized:

> Allen repeatedly acknowledged that there could be false allegations of sexual abuse despite forensic interviewing and that she was not offering an opinion on the veracity of the allegations made in this case. Further, in discussing forensic interviewing protocol, Allen testified that the purpose is not to determine the guilt of a suspect and that the use of the protocol does not indicate a decision regarding the veracity of the allegations. Allen explained that the interviews are set up and conducted, and thereafter "[Care House] create[s] an opportunity for the investigators to meet with each other and a multi-disciplinary team to work their investigation hand-in-hand," enabling "Children's Protective Services and law enforcement to reach an outcome that either is moved forward for criminal prosecution or not." Allen indicated that she does not investigate cases and that children are referred to Care Hose by protective services investigators or law enforcement. Allen acknowledged that children can be mistaken about the sexual nature of touching, can be coached, or can have motives to make false allegations.
>
> Belcourt, No. 265275, at *6.

Furthermore, as noted above, the jury acquitted Petitioner of the two counts of second-degree CSC involving AP, finding him guilty of only assault with intent to commit second-degree CSC. The alleged instances of indirect vouching are not such significant factors that their admission constitutes a denial of fundamental fairness.

Because the denial of a mistrial for the alleged direct vouching and the admission of the alleged indirect vouching does not result in a denial of fundamental fairness, the court will not consider on habeas review any questions of state law regarding the testimony.

### B. Claims #2 and #3: Prosecutorial misconduct and ineffective assistance of counsel

In his second claim, Petitioner alleges that he was deprived of a fair trial because of

prosecutorial misconduct. In his third claim, Petitioner contends that he was deprived of the effective assistance of counsel because his counsel failed to object to the various forms of prosecutorial misconduct which he raises in his second claim. For purposes of judicial economy, this court will address Petitioner's prosecutorial misconduct claim along with his ineffective assistance of counsel claim. See Millender v. Adams, 187 F. Supp.2d 852, 874 (E.D. Mich. 2002).

When evaluating prosecutorial misconduct in a habeas case, "the correct inquiry is whether the improper comments or actions 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' The issue is not whether the comments are improper in and of themselves." Slagle v. Bagley, 457 F.3d 501, 518 (6th Cir. 2006) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). See Millender, 187 F. Supp.2d at 875 ("When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor."). The court first asks whether the prosecutor's conduct and remarks were improper. If the remarks were improper, the court must then consider four factors to determine whether the impropriety was flagrant enough to warrant reversal: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." United States v. Carter, 236 F.3d 777, 783 (6th Cir. 2001) (citing United States v. Carroll, 26 F.3d 1280 (6th Cir. 1994)); See also Millender, 187 F. Supp.2d at 875.

Petitioner first claims that the prosecutor implied knowledge outside the record that Mr.

Belcourt has a history of sexually abusive behavior:

> "Defendant corroborated all the versions of what the victims had to say with the exception of the touching, and we know he wasn't going to get up here and say that. Defendant had the opportunity, the desire and the history to commit these crimes."

The Michigan Court of Appeals agreed that this remark was improper but held that the remark did not affect Petitioner's rights:

> The remark involved only a brief portion of the prosecutor's arguments, was of comparatively minor importance considering the totality of the evidence against defendant, and was not so inflammatory that defendant was prejudiced. . . The trial court instructed the jurors that the lawyer's comments are not evidence and that the case should be decided on the basis of the evidence. The instructions were sufficient to dispel any possible prejudice.

Belcourt, No. 265275, at *7.

Applying the four factors from Carter, this court agrees with the Michigan Court of Appeals that the remark, though improper, was not prejudicial. First, the remark was not likely to mislead the jury; taken in context, the mention of Petitioner's "history" referred to the prosecutor's theory that Petitioner began abusing AP and EB once he realized that LP was no longer going to tolerate his behavior. The remark is therefore capable of two meanings: that Petitioner had a history of abusive behavior outside that at issue in his trial or that Petitioner had established a history of abusive behavior with LP before EB and with EB before AP. "[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." Donnelly v. DeChristoforo, 416 U.S. 637, 646-47 (1974). Second, the remark was isolated; it constitutes only five lines in the twenty-six pages of the prosecutor's closing argument and rebuttal. See Slagle, 457 F.3d at 527 (holding that fifteen

9

comments in the course of a trial were not extensive). Because the prosecutor made only one reference to Mr. Belcourt's "history," the remark was accidental rather than intentional. See id. at 527 (holding that comments were accidental when each was spoken once and not repeated). The fourth factor is in Petitioner's favor because the only evidence is the uncorroborated statements of the witnesses. See Washington v. Hofbauer, 228 F.3d 689, 708 (6th Cir. 2000) (holding that prosecutorial misconduct was prejudicial where there was no evidence outside complainant's allegations); Dittrich v. Woods, 602 F. Supp.2d 802, 808 (E.D. Mich. 2009) (holding that evidence is not compelling for purposes of this fourth factor where there are no eyewitnesses or unbiased witnesses besides complainant). However, even though the fourth factor favors Petitioner, the remaining three suggest that the remark was not prejudicial. Therefore, Petitioner has not met his burden of showing that the alleged misconduct was flagrant. See United States v. Modena, 302 F.3d 626, 636 (6th Cir. 2002) (holding that, where two factors favored a criminal defendant and two favored the government, the petitioner failed to show that the misconduct was flagrant). Additionally, the jury was specifically instructed that lawyers' comments are not evidence. Timely jury instructions can mitigate the improprieties in a prosecutor's remarks. Byrd v. Collins, 209 F.3d 486, 537 (6th Cir. 2000) (quoting Carroll, 26 F.3d at 1389 n.12); See also Richardson v. Marsh, 481 U.S. 200, 211 (1987) ("The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process.").

     The Court likewise rejects Petitioner's ineffective assistance of counsel claim with respect to this remark. To prevail on an ineffective assistance of counsel claim, Petitioner must

show that the state court's conclusion regarding his claim was contrary to, or an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a two-prong test for claims of ineffective assistance of counsel: "first, the defendant must show that counsel's performance was deficient. . . Second, the defendant must show that the deficient performance prejudiced the defense." Id. at 687. To demonstrate prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The Michigan Court of Appeals held that, "In light of our conclusion that the claimed errors . . . did not affect defendant's substantial rights, i.e., were not prejudicial, defendant cannot demonstrate that there is a reasonable probability that, but for counsel's inaction, the result of the proceedings would have been different." Belcourt, No. 265275 at *10.

Because this Court agrees that the prosecutor's remark was not prejudicial, we hold that the Michigan Court of Appeals correctly applied Strickland in reaching its determination that Petitioner failed to demonstrate that his counsel was ineffective for failing to object to the non-prejudicial remark.

Petitioner next claims that, based on three selected quotes, the prosecutor vouched for the credibility of complainants. Plaintiff further claims that the prosecutor misrepresented the evidence when he said that complainants' testimony was not contradicted despite Mr. Belcourt's contradiction of their testimony, implying that Mr. Belcourt's testimony was not reliable:

> And you also heard from [LB] who is the [d]efendant's adopted daughter. And she testified in a manner that was consistent that wasn't contradicted by anyone. What they did instead of coming in and contradicting what she said they came in and slammed her. They did everything.
> \* \* \*
> And yes it's a lie, but you know what there's nothing that shows any evidence that

11

> [LB] was making this up, that she's lying about what happened.
>
> * * *
>
> You're also going to hear, the Judge will instruct you, that it's not necessary that you have any other evidence beyond what the girls have said. I don't have to give you any other evidence provided you believe these girls beyond a reasonable doubt. As there's no reason to question that they have to say because they have been consistent, they have been resolute in their testimony and there's nothing to contradict what they said.

The Michigan Court of Appeals held that these remarks were not improper:

> Through a partial and selective recitation of the record, defendant has mischaracterized the prosecutor's argument. Viewed in context, it is clear that the prosecutor was asserting that, apart from the defense witnesses' testimony, there was no evidence that contradicted the victim's testimony.

Belcourt, No. 265275 at *8.

"It is patently improper for a prosecutor either to comment on the credibility of a witness or to express a personal belief that a particular witness is lying." Hodge v. Hurley, 426 F.3d 368, 378 (6th Cir. 2005). "Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." Modena, 302 F.3d at 634 (quoting United States v. Emuegbunam, 268 F.3d 377, 404 (6th Cir. 2001)). "Generally, improper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." United States v. Francis, 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted). "To be certain, prosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence. But, they can not put forth their opinions as to the credibility of a witness, guilt of a defendant…" Hodge, 426 F.3d at 378 (quoting Bates v. Bell, 402 F.3d 635, 646 (6th Cir. 2005)).

Viewed in context, the prosecutor's remarks argue the record and forcefully assert reasonable inferences from the evidence; the remarks do not reflect the prosecutor's opinion as to the credibility of the witnesses, though they may toe the line. In context, the first allegedly improper remark does not claim that Petitioner entirely failed to contradict LP's testimony. Instead, the remark introduces the prosecutor's interpretation of Petitioner's strategy: they would attempt to ruin her credibility with attacks on her character, "slamming" her. With the sentence following the second allegedly improper remark, the prosecutor introduces an explanation of how Ms. Allen's testimony supports LP's evidence: "The evidence supports the fact that the Defendant did these things…" With respect to the third allegedly improper remark, the prosecutor was not referring to the lack of contradiction by the defendant but the lack of contradiction within LP's own testimony. The sentence immediately following Petitioner's excerpt explains: "there was no testimony that shows that they gave inconsistent statements when they testified previously." When read in context, the prosecutor does not vouch for the witnesses in any of these remarks. Furthermore, the jury was specifically instructed that "the lawyer's statements and arguments are not evidence, they are only meant to help you understand the evidence and each side's legal theories."

Because the prosecutor's remarks were not improper, counsel was not ineffective for failing to object to them. Where, as here, the evidence to support a guilty verdict hinges entirely upon a credibility contest and evidence of guilt is therefore somewhat weak, "the magnitude of error necessary for a finding of prejudice will be less than where there is greater evidence of guilt." Dittrich, 602 F. Supp.2d at 808. See Brown v. Smith, 551 F.3d 424, 434-35 (6th Cir. 2008) (finding prejudice in a sexual abuse case where there was no physical evidence and

13

counsel failed to investigate credibility of witness).  Here, however, there was no error in counsel's failure to object to remarks that were not improper, and so there was not even that diminished magnitude of error necessary for a finding of prejudice.

Petitioner finally claims that, through the three quotes above, the prosecutor implied that Mr. Belcourt had an obligation to contradict the prosecution's evidence with other evidence, shifting the burden of proof.  The Michigan Court of Appeals again held that, taken in context, the remarks were not improper: "here the prosecutor's argument did not shift the burden of proof.  Rather, viewed in context, the prosecutor discussed the evidence and argued that the victims were credible."  Belcourt, No. 265275 at *8.  The court agrees for the reasons stated above.  Furthermore, the jury was specifically instructed that "[t]he prosecutor must prove each element of the crime beyond a reasonable doubt.  The Defendant is not required to prove his innocence or to do anything."  Because the remarks were not improper, counsel was not ineffective for failing to object.

### C. Claim #4: Hearsay testimony and ineffective assistance of counsel

In his fourth claim, Petitioner contends that he was deprived of the effective assistance of counsel because his counsel failed to object to the admission of hearsay evidence which he raises in the same claim.

Under Michigan law, excited utterances are admissible as an exception to the hearsay rule.  MRE 803(2) defines an "excited utterance" as "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  Petitioner contends that neither EB's nor AP's statements to their mothers qualify as excited utterances because of the girls' opportunities for reflection between the occurrences and

their narratives. The trial court allegedly erred in allowing the mothers to report these statements, and counsel, in turn, was ineffective for failing to object. The Michigan Court of Appeals held that the girls were under the stress caused by the events when they made their statements to their mothers, and so the statements are admissible as excited utterances. Belcourt, No. 265275 at *9. The Michigan Court of Appeals further held that, because the claimed error was not prejudicial, Petitioner is unable to show that his counsel was ineffective for failing to object. Id. at *10.

Because Petitioner's objections to the admission of the mothers' testimony are a matter of state law, they will not be reviewed by a federal court absent a showing that the admission of the mothers' testimony constitutes a denial of fundamental fairness. See Seymour, 224 F.3d at 552. Petitioner has not shown that the admission of the mothers' testimony constitutes a denial of fundamental fairness. Petitioner offers several Michigan state cases where the court held that where the complainants' testimony is the only evidence against the defendant, improper bolstering testimony may be crucial to the jury's verdict. However, Petitioner offered nothing more than a conclusory statement to show that the bolstering testimony was crucial in this case. We note that AP was acquitted of two additional counts of second-degree CSC involving AP despite her mother's testimony.

The Court likewise rejects Petitioner's ineffective assistance of counsel claim with respect to this remark. To prevail on an ineffective assistance of counsel claim, Petitioner must show that the state court's conclusion regarding his claim was contrary to, or an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). Petitioner has failed to establish a reasonable probability that the admission of the testimony was prejudicial. Therefore, counsel

15

was not ineffective for failing to object.

### D. Claims #5 and #6: Sentencing and ineffective assistance of counsel

i. *Blakely* does not apply because it does not affect Michigan's sentencing system.

Petitioner alleges that his Sixth Amendment rights were violated because the trial court's factual findings supporting the scoring of offenses were not determined by a jury. Plaintiff relies on Blakely v. Washington, 542 U.S. 296 (2004), in which the Supreme Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. Id. at 301 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)).

Michigan's sentencing system is unaffected by Blakely. Michigan has an indeterminate sentencing system in which the maximum sentence is set by law. The trial judge sets only the minimum sentence, which is calculated based on Michigan's sentencing guidelines and must be below the maximum sentence. People v. Claypool, 470 Mich. 715, 730 n.14 (2004). The Supreme Court has repeatedly held that sentencing systems such as Michigan's, in which judges set minimum sentences based on facts not found by a jury, do not violate the Sixth Amendment. See United States v. Booker, 543 U.S. 220, 233 (2005) ("For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant."); Harris v. United States, 536 U.S. 545, (2002) ("Within the range authorized by the jury's verdict, however, the political system may channel judicial discretion – and rely upon judicial expertise – by requiring defendants to serve minimum terms after judges make certain factual findings."). In Blakely, the Court drew a distinction between determinate sentencing systems, such as the Washington system overturned

in Blakely, and indeterminate sentencing systems such as Michigan's:

> Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence – and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail.

Blakely, 542 U.S. at 309.  Accordingly, the Michigan Supreme Court has determined that Michigan's indeterminate sentencing system does not violate Blakely.  See People v. Drohan, 475 Mich. 140, 159-60 (2006); Claypool, 470 Mich. at 730 n.14.  This court agrees that Blakely does not apply to indeterminate sentencing.

Because Michigan's sentencing system is unaffected by Blakely and does not otherwise constitute a denial of Petitioner's rights under the Sixth Amendment, Petitioner is not entitled to habeas relief on those portions of his sixth claim that rely on Blakely.

    ii. Scoring of OV 9 of the Michigan Sentencing Guidelines.

Petitioner claims that OV 9 of the Michigan Sentencing Guidelines was incorrectly scored at 10.  The Michigan Court of Appeals agreed that OV 9 was improperly scored and remanded for correction of the score.  However, the Michigan Court of Appeals affirmed the sentence because reducing OV 9 from 10 to zero had no affect on Petitioner's sentencing range. Belcourt, No. 265275 at *11.  Because the change in the scoring of OV 9 does not affect Petitioner's sentence in any way, Petitioner has failed to show that counsel's failure to object to the scoring was prejudicial.  Therefore, Petitioner's ineffective assistance of counsel claim with respect to the scoring of OV 9 fails.

    iii.  Scoring of OV 11

17

Petitioner claims that OV 11 was improperly scored at 50.  MCL 777.41(1)(a) provides for a score of 50 points if "two or more criminal sexual penetrations occurred."  Petitioner claims that he was only convicted of one count of first-degree criminal sexual conduct and that there was no testimony that there was more than one penetration involved in the incident.  If OV 11 were reduced from 50 to zero, Petitioner's guideline range would be 81 to 135 months; Petitioner's current sentence is 180 months.

The Michigan Court of Appeals held that there was sufficient evidence of more than one penetration:

> LB testified that during the assaults involving penetration, defendant would insert two fingers or "one a couple of times" in her vagina and move "in and out" for five to ten minutes.  This evidence supports the trial court's score of 50 points for OV 11.

Belcourt, No. 265275 at *12.

At the outset, this court notes that Petitioner's sentence of 180 months is within the statutory maximum of life imprisonment for first degree criminal sexual conduct.  MCL § 750.520b(2).  Claimed violations of state law regarding sentencing are generally not cognizable on habeas review so long as the sentence imposed is within the statutory limits.  Townsend v. Burke, 334 U.S. 736, 741 (1948); Cook v. Stegall, 56 F. Supp.2d 788, 797 (E.D. Mich. 1999). Generally, federal habeas review of a state court sentence ends once the court makes a determination that the sentence is within the limitation set by statute.  Allen v. Stovall, 156 F. Supp.2d 791, 795 (E.D. Mich. 2001).  Furthermore, Petitioner has no state-created interest in having the Michigan Sentencing Guideline applied rigidly in determining his sentence.  Payne v. Smith, 207 F. Supp.2d 627, 640 (E.D. Mich. 2002).  See also Austin v. Jackson, 213 F.3d 298, 301 (6th Cir. 2000) (denying habeas relief for a state court's imposition of a sentence above the

guideline range but below the statutory maximum). Petitioner's claim that the sentencing guidelines were incorrectly scored thus fails to state a claim upon which habeas relief can be granted. Cook, 56 F. Supp.2d at 797.

Petitioner further claims that counsel was ineffective for failing to object to the allegedly erroneously scored OV 11. The Michigan Court of Appeals has determined that OV 11 was properly scored that and there was therefore no basis for an objection. Belcourt, No. 265275 at *12. Because the Michigan Court of Appeals concluded that the guidelines were properly scored under Michigan law, and this court must defer to that court's interpretation of state law, Petitioner is unable to establish that counsel was ineffective for failing to object to the scoring of the guidelines. See Adams v. Smith, 280 F. Supp.2d 704, 721 (E.D. Mich. 2003).

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus.

The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 22553(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 483, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. Id. at 484. A district court has the power to deny a certificate of appealability sua sponte. Allen, 156 F. Supp.2d at 798. For the reasons stated in this opinion,

the court will deny Petitioner a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims.

## V. ORDER

Based on the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

s/John Corbett O'Meara
United States District Judge

Date:  August 13, 2009

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, August 13, 2009, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager